Commonwealth ex rel. Herman, Appellant, v. Herman.

Argued October 19, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*William A. Gray,* for appellant.—The wife's conduct unless it be sufficient cause for divorce will not justify her husband's abandonment of her and bar her right to support: Grove's Appeal, 37 Pa. 443.; Olive v. Olive, 1 Haggard Con. Rep. 361.

*Herman Moskowitz,* for appellee.

OPINION BY CUNNINGHAM, J., March 1, 1929:
After a hearing and rehearing in a desertion and

non-support proceeding instituted by the Commonwealth, upon the relation of Mary Herman, for an order directing her husband, Louis Herman, to contribute to her support, the judge of the municipal court of Philadelphia County before whom the hearings were held, dismissed the application and the petitioner has appealed to this court.

These material facts appear from the testimony: The parties were married February 17, 1924, and have no children. Defendant is a practicing dentist and an instructor at Temple University. Petitioner, prior to her marriage, had been earning approximately $200 per month as a field secretary for a hospital association. For a short time after their marriage they lived at petitioner's home, but in July, 1924, went to housekeeping at No. 104 W. Susquehanna Avenue in a rented house, a portion of which was used by defendant for office and laboratory purposes. Within a comparatively short time unfortunate differences, apparently largely due to incompatability of temperament, arose. They consisted of bickerings over money matters, an expression by petitioner of suspicions of infidelity upon the part of defendant and recriminations by him, complaints by petitioner of indifference and neglect, and a general course of conduct in which each seems to have been about equally at fault.

In July, 1924, defendant transferred to petitioner the sum of $1,800, which he then had in a savings account, but petitioner testified at the rehearing that it had been exhausted by the purchase of clothing, household furnishings, etc., and payment of counsel fees. In the fall of 1926 defendant reduced petitioner's allowance from approximately $55 a week to $15 and has contributed nothing toward her support since January 22, 1927, except to pay the rent of the house. His attitude toward his legal liability to support his wife is clearly reflected in that portion of his testimony which reads: "Q. When did you last give your wife any

money? A. I think it was December, 1926. Q. And if you can do so, without going into a long discussion of the difficulties between you and your wife, why did you stop? A. Because she made life, living with her, intolerable. Q. That is why you stopped? A. Yes, sir. Q. You told her, did you not, either in December or January that you would have to get out? A. Yes. Q. And did you tell her also you were not going to support her any further? A. Well, I didn't have to tell her, see, the fact that I didn't give her money was sufficient evidence. Q. You didn't intend to support her? A. I didn't intend to. Q. Did you also tell her you wanted her to get a divorce? A. I didn't mention divorce, I told her I would not want to live with her. Q. Didn't you say, 'You get out of here and get a divorce?' A. No, she brought up the word divorce, she mentioned it that's why she would never give me a divorce.''

On January 29, 1927, the defendant withdrew from their residence and after living a short time at a hotel went to reside with his brother. He is still occupying his offices but testified that he ''never entered the house'' and made no provision for the maintenance of petitioner except to allow her ''to remain in the house.''

The first hearing was held March 17 and the rehearing on May 9, 1927. Between these dates the defendant removed practically all the furniture from the house and placed it in storage. Since the removal of the furniture the petitioner has lived with her sister. The testimony of her physician indicates that she is unable to engage in any continuous occupation and her only resources seem to consist of twenty-five shares of building and loan stock which have been running approximately five years and against which she has a loan of $100, and a fund of $1,000, the proceeds of matured building and loan stock, which she has reinvested and from which she receives an income of

about $50 a year. The testimony indicates that defendant's net professional earnings for 1925 and 1926 have been approximately $3,800 each year; he also owns an automobile which cost $1,312, some bonds of the value of $300 and thirty shares of building and loan stock. In commenting upon the evidence and in stating the reasons for his refusal to make an order, the hearing judge said: ''The conduct of the petitioner before the court, her method of testifying, her irascibility, her dominating, irritating and constant talking, interrupting the testimony of others, gave the court an opportunity to apply carefully the testimony of the respondent to the home situation as he described it, and this aided the court materially in concluding that the petitioner was what might be justly termed a 'house tyrant,' justifying the respondent withdrawing from his home and habitation.''

There are also expressions in the opinion to the effect that the court below ''is slow to become a mere distributing agency of the earnings of [a] man to the selfish uncooperating, nagging wife......particularly [when] she renders no service either in affection, companionship or aid in the normal pursuit of marital happiness.'' We must therefore conclude that the hearing judge refused to make an order directing the defendant to pay a reasonable portion of his income to the petitioner because he found from the evidence that she was irascible, dominating, selfish, non-cooperating and nagging. Assuming that the evidence justifies this characterization of the petitioner, we must regard the conclusion drawn merely as an expression of the individual opinion of the judge who heard and determined the case in the court below; it is not in accordance with the laws of this state. A careful reading of all the testimony fails to disclose such conduct on the part of petitioner as would legally entitle the defendant to a divorce from her, and it is well established that the only ''reasonable cause'' justifying a husband in re-

fusing to support his wife is conduct on her part which would be a valid ground for a decree in divorce. The defendant, however, has not only elected to withdraw from their habitation but has also, by removing the furniture, practically ejected the petitioner from the only home he ever provided for her and now flatly refuses to contribute anything toward her support. Culpable as the conduct of petitioner has been, as disclosed by the testimony, it was not a reasonable cause for defendant's acts and his present attitude. Defendant, having separated himself from petitioner under the circumstances appearing from this record, is legally bound to contribute to her support at least until he shall have made a bona fide offer of reconciliation and maintenance in a proper home, or shall have produced evidence entitling him to a divorce. The foundation for an order in proceedings of this kind is the right of the wife to such support from her husband as she might reasonably expect from one in his financial situation. In this case the order should not exceed one-third of the net amount which the evidence indicates the defendant, through the exercise of his present ability and capacity, will probably earn from the practice of his profession: Com. ex rel. v. Milne, 90 Pa. Superior Ct. 68; Com. v. Leonard, 93 Pa. Superior Ct. 21.

The order dismissing the petition is reversed and the record remitted to the court below with directions to enter an order requiring the defendant to pay weekly for the support of the petitioner such amount as to that court shall seem reasonable and proper under all the evidence.