Commonwealth ex rel. Haimowitz *v.* Haimowitz, Appellant.

Argued March 21, 1972. Before Wright, P. J., Watkins, Jacobs, Hoffman, Spaulding, Cercone and Packel, JJ.

*Jack A. Rounick,* with him *Moss, Rounick & Huro-witz,* for appellant.

*Bernard V. DiGiacomo,* with him *DiGiacomo & Lynch,* for appellee.

OPINION BY CERCONE, J., June 15, 1972:

This is an appeal by the husband-defendant from the lower court's order of support in the amount of $175.00 per week for the wife-plaintiff and 10-year old daughter.

It is the husband's contention that the court below abused its discretion in awarding said amount because it was based not on defendant's actual earnings in his current position, which he had accepted with wife-plaintiff's acquiescence and consent, but was based on what the court felt he could have been earning with another company.

It is our opinion from our study of the record that the court below did abuse its discretion in fixing the amount of support payable by the husband-defendant.

Defendant has been, since 1969, sales representative of men's belts for the Robert Bruce Company (a company in which the principal stockholder is defendant's uncle), earning a salary of $14,300 per year with a take home pay of $245 per week. From this take home income he is responsible for all business expenses inci-

dent to his work, such as parking, tolls, car rental, hotel, meals, gas, telephone, business organizations and dues, taxicabs and trains, and car insurance, totalling, he testified, in excess of $600 per month, which amount is consistent with the defendant's 1970 income tax return introduced into evidence. In addition, defendant is required to pay for his salesman's samples.

Defendant is also paying for hospitalization and health insurance at the rate of $35 per month and maintains other insurance at a monthly expense of $89, which expenses benefit the wife and child.

The husband testified as to his personal living expenses which he attempted to keep at a minimum by living with his parents and paying them $60 per month for room and board. He reasonably approximated his other personal living expenses at $150 per month.

There was no testimony to refute or contradict the amount of defendant's salary. However, the court below in its opinion states: "The Court does not believe the defendant's testimony concerning his present earnings . . . it is inconceivable that the principal stockholder of a large corporation would employ her 41 year old nephew in a position from which he would net only $100 per week." Though it is true that the credibility of the witness is for the court below to decide, we believe that in this case it was an abuse of the lower court's discretion for it to ignore the uncontradicted evidence of the amount of defendant's earnings on a mere surmise that he must be earning more. In the absence of any evidence indicating said surmise to have a basis in fact, the court must enter its order on the basis of the record which revealed that the plaintiff was aware of and did agree to the defendant's receiving the lesser salary of $14,300 when working for the Robert Bruce Company. It was error, therefore, for the lower court to imply, without any evidence in

support thereof, ill motive or secret gain in such employment with Robert Bruce when said employment was accepted by defendant after discussion with and agreement by his wife. This clearly is not a case of defendant deliberately diminishing or concealing the amount of his salary.

For this same reason the court below could not properly consider the salary earned by defendant in his prior job at Hickock in determining the amount of support payable by him. The court below was greatly influenced by the fact that defendant's salary with Hickock was greater than that earned at Robert Bruce. This was clearly error for, as before stated, the move from Hickock to Robert Bruce, with its consequent lesser salary, was made with plaintiff's consent and acquiescence in the belief that the lesser salary was offset by the opportunities for future advancement. The wife acknowledged of record her acquiescence in and consent to the switch to Robert Bruce. To permit her to argue now that defendant should have stayed at Hickock and that she is entitled to an amount of support based on what he would have earned at Hickock would be most unjust and unfair. It is not the purpose of an order of support to punish the husband (*Com. ex rel. Warner v. Warner*, 194 Pa. Superior Ct. 496 (1961)).

When the wife-plaintiff agreed to the lesser income she necessarily had to take into account that the family income would be less and that her standard of living would be necessarily affected thereby. It is that standard of living, so reduced by the lesser salary, to which the lower court should have addressed itself, and not the standard of living that would have been afforded by defendant's prior job with Hickock.

It is our determination from a careful study of the record that in view of the lack of evidence contradict-

ing the actual amount of defendant's income, which amount was in effect affirmed by the wife-plaintiff's testimony, and in view of the lack of evidence contradicting that defendant did have sizable business expenses, as indicated in his 1970 income tax return, an order of $175 per week out of $245 per week take home pay was confiscatory, especially in view of his $35 monthly Blue Cross payment and the $89 monthly insurance payment, which payments benefited wife and child.

Though we sympathize and understand the plight of the wife and child in this day of rising living costs, the court is also required to consider that the defendant-husband is equally faced with those spiraling costs in both his business expenses and his personal living expenses. It is our opinion, therefore, that the order of the court below must be reduced to the amount of $125 per week which we believe to be just and reasonable under the circumstances.

WRIGHT, P. J., would affirm on the opinion of Judge HONEYMAN.

HOFFMAN and JACOBS, JJ., dissent.